## Commonwealth *v.* Pacini, Appellant.

*James K. O'Malley,* with him *Neil H. Fink,* for appellant.

*William C. Costopoulos,* Deputy District Attorney, with him *LeRoy S. Zimmerman,* District Attorney for Commonwealth, appellee.

OPINION BY SPAULDING, J., June 14, 1973:

The sole issue in this appeal is whether a party to a criminal proceeding may have the jury polled after the verdict has been announced and affirmed in open court. Appellant John F. Pacini was convicted of rape by a Dauphin County jury. He seeks a new trial on the basis of the trial judge's refusal to allow him a poll of the jury.[1]

Appellant's trial involved conflicting testimony as to whether the prosecutrix consented to intercourse with appellant. At the conclusion of testimony, the jurors retired for deliberation, charged with the definitions of rape, indecent assault and assault and battery. After two hours of deliberation, the jury returned for further instructions as to the definition of indecent assault. After four hours of further deliberation, the jury returned again and announced that it was unable

---

[1] Following his conviction, appellant made motions for arrest of judgment and for a new trial, both of which were denied. It is from those orders that he now appeals.

to reach a verdict. Upon further instructions from the court as to the definition of indecent assault, the jury again retired, returning after a few minutes with its verdict. The following transpired:

"The Court: All right. Have you reached a verdict? [Forelady]: Yes. . . . The Clerk: In the case of Commonwealth versus John F. Pacini to the charge of rape, indecent assault and assault and battery how do you find the Defendant? [Forelady]: Guilty of rape. . . . The Court: Will you record the verdict please? [The verdict was recorded.] The Clerk: Will the jury please rise. Harken to your verdict as the Court hath it recorded, in the case of the Commonwealth versus John F. Pacini, to No. 1088 Criminal Division 1971 on the charge of rape you find the Defendant guilty and so say you all? The Jury (in unison): Yes. The Clerk: Please be seated. The Court: All right. Mr. Shumaker: Your Honor, I'd like to poll the jury. The Court: You are too late to poll the jury now."[2]

Appellant contends that this denial of his motion to poll the jury constitutes reversible error. It is undisputed that either party to a criminal proceeding has the right to poll the jury. "The procedure had its genesis in ancient common law (see 2 Hale, Pleas of the Crown 299) and has long been approved and uniform practice in this State. (citations omitted)." *Commonwealth v. Martin,* 379 Pa. 587, 109 A. 2d 325 (1954). "The polling of the jury is the means for definitely determining, before it is too late, whether the jury's verdict reflects

---

[2] Although counsel for appellant did not object at this point, such failure to object is not fatal to this appeal. Apart from the "fundamental" nature of the right denied, *Commonwealth v. Martin,* infra, and the fact that appellant raised the instant contention in post-trial motions, Rule 100(a) of the Pennsylvania Rules of Criminal Procedure creates "a sealed exception in favor of the party adversely affected" by a trial judge's ruling on a motion, "without the necessity of a formal request or notation made on the record."

the conscience of each of the jurors or whether it was brought about through the coercion or domination of one of them by some of his fellow jurors or resulted from sheer mental or physical exhaustion of a juror." *Martin, id.* at 593.

Equally well-established is the fact that the erroneous denial of the right to poll the jury constitutes reversible error. Such action by a trial court works a "denial of a right of the accused so fundamental as to require a retrial even though . . . the trial was otherwise markedly free from error and the jury's verdict was fully warranted by the evidence. . . . [I]t is better that the case be tried again than that a precedent impairing a defendant's right to a poll of the jury be engrafted on our criminal procedure." *Martin, id.,* at 592.

The right to have the jury polled must be exercised timely, however, and it is the timeliness of appellant's motion which is at issue here. The procedure for the assertion of this right is governed by Rule 1120 (f) of the Pennsylvania Rules of Criminal Procedure, which provides: "Before any verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. If upon such poll there is no concurrence, except for a sealed verdict, the jury shall be directed to retire for further deliberations." As appellant's motion came after the verdict was announced by the jury's forewoman, transcribed by the clerk of the court, and assented to by the jury in unison, we must decide whether, as appellant contends, the right to a polling of the jury remains intact beyond the *viva voce* confirmation of the verdict by the jury.

As noted in the Comment to Rule 1120 (f), the rule was designed to establish the procedure for the polling of a jury "in accordance with Commonwealth v. Martin", the leading and most recent Pennsylvania case in this area. *Martin,* however, is inapposite on its facts to the instant case and not controlling here, as the request

for polling in *Martin* came after the verdict was announced by the foreman and recorded by the clerk, but *before* confirmation of the verdict in unison by the jury. The motion in *Martin* was denied by that trial court, as untimely made. In holding that action to constitute reversible error, the Supreme Court, while not faced with the precise question before us, affirmatively stated that the right to a polling of the jury is not terminated by the actual transcribing of the verdict by the clerk of the court. They stated that: "It is too plain for discussion that the verdict could not have been recorded before the clerk had read it back to the jury for their *viva voce* confirmation which is ordinarily given in unison. [In *Martin* that had not been done, and] until it was done without dissent from any juror, the verdict could not be considered as recorded." 379 Pa. at 597. In so concluding, the Court effectively removed any significance from the literal "recording" of a verdict, preferring instead to judge the finality of a verdict in terms of its being *unalterably* recorded, rather than being merely physically recorded. We agree with that approach.[3]

The Commonwealth contends that the Court in *Martin,* by its holding, established a rule barring a polling of the jury after the jury's *viva voce* confirmation. We do not read *Martin* as setting up such a fixed standard of timeliness. Indeed, immediately following the above quotation, the Court in *Martin* embraced the selected language of several earlier cases: "[I]n Eastley v. Glenn, 313 Pa. 130, 132, 169 A. 433, it was said that 'Reading the verdict slip with the prefix, ". . . hearken to your

---

[3] Such an approach is especially important when we consider the immediacy with which verdicts are often recorded after being announced. See *Miranda v. United States,* 255 F. 2d 9 (1st Cir. 1958).

verdict as the court has recorded it," followed by an oral dissent, with or without poll, by a member of the jury *before dismissal,* is not returning or recording a verdict as is required by law.' . . . In Walters v. Junkins, supra,[4] it was stated that 'After the jury have rendered their verdict, it is read to them, that they may say, whether the court have recorded it according to their finding. If any mistake should have occurred, it may be immediately corrected. To permit an alteration *after the jury are dismissed,* would lead to great abuses. . . .' It is implicit in what Chief Justice MAXEY said for this court in Commonwealth v. Johnson, supra,[5] that the recording of the verdict does not become unalterable until the opportunity of the jury to correct or alter it has passed with 'their dispersion'. (citations omitted.)" (Emphasis in original.) That Supreme Court later reaffirmed this view in *Reed v. Kinnik,*[6] stating that: "It is sufficient to say that no single moment is the *only* moment at which the Motion can be entertained. A poll cannot be taken after a jury having announced its verdict has dispersed and come into contact with other persons, but . . . [quoting from Justice JONES in Martin] the recording of the verdict does not become unalterable until the opportunity of the jury to correct or alter it has passed 'with their dispersion'. . . . A Motion to Poll, be it made at the moment the verdict is first announced in Court, or *even if made after the verdict is affirmed and 'entered' of record, is still timely so long as it is made before the jury has dispersed."* (Emphasis added.) We agree with this view espoused by the Court in *Martin* and *Reed* and hold that appel-

---

[4] 16 S. & R. 414.

[5] 359 Pa. 287, 59 A. 2d 128 (1948). In *Johnson* it was held that a jury may not be polled after its dispersal because of the possibility that it will come into contact with outside influences.

[6] 389 Pa. 143, 153 A. 2d 208 (1957).

lant should have been afforded the right to poll the jury prior to its dispersal.[7]

In concluding that appellant's motion was timely, we are impressed with the unique quality of the individual polling of jurors. If we are to further the purposes of polling enunciated by our Supreme Court, *i.e.*, to determine whether the verdict "reflects the conscience of each of the jurors" or whether it was the product of the coercion, domination or exhaustion of one of them, the *viva voce* confirmation of the verdict in unison by the jury is no psychological substitute for an individual confrontation of jurors as to their concurrence in the announced verdict.[8] If underlying dissent, coercion or exhaustion existed and was repressed in the jury deliberation room, it is too likely to continue to be muted in a collective, ceremonially-worded inquiry into the verdict to allow the group *viva voce* assent to the verdict to terminate the right to a polling. "A shy or nonaggressive juror might well be silent as to his verdict until specifically asked about it." *People v. Light*, 285 App. Div. 496, 498, 138 N.Y.S. 2d 262, 265 (1955). Whatever interest there may be in the judicial neatness of estab-

---

[7] This standard has been adopted by the American Bar Association Project on Minimum Standards for Criminal Justice. That proposal reads: "When a verdict has been returned *and before the jury has dispersed*, the jury shall be polled at the request of any party or upon the court's own motion. The poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." *Standards Relating to Trial by Jury* Approved Draft, 1968.

[8] Indeed, polling is effectual and thus necessary *only* in those situations where there is underlying dissent concealed or stifled in a seemingly-unanimous confirmation of the announced verdict. There would be no need for a special polling procedure if dissent or coercion were always freely proclaimed by the minority of jurors affected.

lishing an arbitrary moment at which a verdict is final must yield to the fundamental importance of ascertaining whether a criminal verdict represents the free will of each juror.[9]

The order of the court below is reversed and the case remanded for a new trial.

---

[9] In concluding that the right to a polling of the jury should be guaranteed up to the point of the jury's dispersal, we do not reach the question of whether such a polling would be a matter of entitlement if the jury had overheard deliberations between counsel and trial judge as to sentencing, bail, etc., prior to the motion for a polling.