Commonwealth *v.* Markle, Appellant.

506

Submitted September 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William F. Ochs, Jr.*, Assistant Public Defender, for appellant.

*Grant E. Wesner*, Deputy District Attorney, and *Robert L. VanHoove*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., March 29, 1976:

Appellant was convicted of two burglaries at two separate trials, one pursuant to Indictment No. 228 of 1972 and the other pursuant to Indictment No. 229. All the issues raised in the appeal from Indictment No. 229 are also raised in the appeal from Indictment No. 228.

Thus, the cases were consolidated for appeal. This Opinion will be divided into two parts: the first will discuss the contentions advanced in the appeal from Indictment No. 229; the second will discuss the additional arguments applicable only to the appeal from Indictment No. 228.

## I. INDICTMENT NO. 229

Appellant was arrested on charges arising out of the burglary of a residence in Hereford Township, Berks County, that took place on August 19, 1970. A preliminary hearing was held on February 14, 1972, and appellant was indicted on May 8, 1972, for burglary, larceny, receiving stolen goods, and conspiracy. On May 31, 1972, appellant filed a motion to quash the indictment, in which he alleged that he had not been afforded the benefit of counsel at the preliminary hearing. The lower court quashed the indictment on September 15, 1972, and directed that a new preliminary hearing be held. Appellant was represented by counsel at the second preliminary hearing on October 26, 1972. The indictment was reissued, under the same term and number as the indictment that had been quashed, on February 26, 1973. Appellant filed a second motion to quash on March 8, 1973. The docket entries reveal that on March 29, 1973, the case was continued until June at the appellant's request. On December 3, 1973, the lower court dismissed the larceny, receiving stolen goods, and conspiracy charges, because the applicable limitations period had expired. In regard to the burglary charge, however, the motion to quash was denied. See 19 P.S. §211. Appellant proceeded to trial on April 16, 1974, and was found guilty.

Appellant's first contention is that the Commonwealth was precluded from taking any action on Indictment No. 229 of 1972 after it was quashed by the

lower court.[1] This argument is without merit. It is obvious that the court below initially quashed the indictment because it was procedurally infirm, not because it was substantively insufficient. Had the court not quashed the indictment, and had appellant been subsequently convicted, the appellate remedy would have been to order a new trial. See, e.g., *Commonwealth v. Redshaw*, 226 Pa. Superior Ct. 534, 323 A.2d 92 (1974). The reissuance of an indictment and subsequent trial does not constitute double jeopardy: "Jeopardy attaches in a case without a jury when the accused has been subjected to a charge and the court has begun to hear evidence ...." *Commonwealth v. Culpepper*, 221 Pa. Superior Ct. 472, 293 A.2d 122 (1972). Thus, the nolle prosse of an indictment does not prevent the issuance of a second indictment for the same offense: "We agree with the Court below that no conceivable harm resulted to defendant in being thus tried and convicted on the second indictment, with the first ultimately being nolle prossed. This did not constitute double jeopardy. *Commonwealth v. Hart*, 427 Pa. 618, 620, 235 A.2d 391 (1967). Appellant's argument appears to be that it was error for the Commonwealth to issue a second indictment at the same term and number as the indictment that had been quashed. The lower court held that the Commonwealth used the same number simply as a matter of administrative convenience. Certainly, appellant has alleged no prejudice, other than the fact of his conviction. Thus, the lower court properly refused to award a new trial on this basis.

Appellant's second contention is that he was denied

1. Appellant's *entire* argument on this point is as follows: "It is the position of the Appellant that when the Court on September 15, 1972, quashed the indictment, that all proceedings on such indictment were vacated. It follows, therefore, that any subsequent trial to an indictment to No. 229 of 1972 must be a nullity, the Commonwealth having failed to appeal the Court's order quashing the indictment. The Court order to the indictment to No. 229 of 1972 is to the effect that it was quashed."

his constitutional right to a speedy trial. Because Rule 1100 is not applicable[2] to the instant case, appellant's claim must be decided under the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and adopted in Pennsylvania in *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). The United States Supreme Court listed four factors which must be balanced in order to determine whether a criminal defendant was denied his right to a speedy trial: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the prejudice to the defendant. It is obvious that appellant has failed to assert any prejudice.[3] Furthermore, appellant effectively agreed to the delay: "Pennsylvania has long had a 'two term' or '180-day' rule providing for the discharge from imprisonment of any accused who has not been tried the second term after his commitment ... *unless the delay happens on the application of or with the assent of the accused." Commonwealth v. Hamilton*, supra at 303-304, 297 A.2d at 130. (Emphasis added). The docket entries reveal that when appellant requested a continuance on March 29, 1973, he expressly waived his right to the benefit of the "two term" rule. Under the circumstances of this case, therefore, the court below did not err in denying appellant's speedy trial contention.

Appellant's final contention is quite brief: "It is noted that the charge of Larceny was quashed. It is therefore contended that the Court in allowing testimony as to a larceny was [committed?] reversible error." Under the

2. Rule 1100 applies only to cases in which the written complaint is filed after June 30, 1973.

3. Appellant's *entire* argument on this point is as follows: "The record will reflect that on September 15, 1972, the Court quashed the indictment against the Appellant concerned with a crime allegedly occurring on September 11, 1970. The Appellant was not re-indicted until February 26, 1973. He was not tried until April 16, 1974. It is submitted that the Court therefore erred in refusing the Appellant's pretrial applications to dismiss based upon lack of a speedy trial."

1939 Penal Code, burglary was defined in the following manner: "Whoever, at any time, wilfully and maliciously, enters any building, *with intent to commit any felony therein,* is guilty of burglary ...." 18 P.S. §4901.[4] (Emphasis added). Thus, it was incumbent upon the Commonwealth to prove that appellant had the requisite intent in order to prove appellant guilty of burglary. Any facts relating to larceny would, therefore, be highly relevant: "The specific intent required to make out a burglary charge may be found in appellant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom. *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963); *Commonwealth v. Bova,* 180 Pa. Superior Ct. 359, 119 A.2d 866 (1956). However, if actions are relied upon, they must bear a reasonable relationship to the commission of a felony. *Commonwealth v. Ellis,* 349 Pa. 402, 37 A.2d 504 (1944); *Commonwealth v. Reynolds,* 208 Pa. Superior Ct. 366, 222 A.2d 474 (1966)." *Commonwealth v. Garrett,* 229 Pa. Superior Ct. 459, 463-464, 323 A.2d 314 (1974). Conduct amounting to the commission of a larceny was properly admitted as evidence of appellant's intent at the time of entry.

Because all the issues raised in the appeal from the judgment of sentence imposed pursuant to Indictment No. 229 are without merit, the judgment of sentence is affirmed.

## II. INDICTMENT NO. 228

The three issues discussed above were also raised in this appeal, and are rejected for the identical reasons. In this appeal, however, five additional assignments of error are raised, one of which requires a reversal and new trial.[5]

---

4. Act of June 24, 1939, P.L. 872, §901; 18 P.S. §4901.

5. The other alleged errors are: (1) Certain remarks made by the

In order to discuss appellant's argument, it is necessary to set forth the circumstances under which appellant was arrested and tried. One Morris P. Hendricks pleaded guilty to approximately sixty burglaries committed in five counties. After Hendricks confessed, he acted as a confidential police informant. Hendricks told the police that he, one Thomas McDonald, and a third man, known to him only as "Joe from Philadelphia," had committed a burglary on September 11, 1970, in Berks County. Hendricks supplied the police with a description of the third person involved, and he subsequently identified appellant from police photographs.

At appellant's trial, during the redirect examination of Pennsylvania State Trooper Brunozzi, the following colloquy occurred:

"Q. And has Mr. Hendricks, since his initial arrest back in November of 1970, cooperated with the state police?

"A. Yes, he has, very much so.

"Q. And you say there were approximately 60 crimes involved?

"A. That would be just a rough guess. It could be 60 or 70 that he had knowledge of or did participate in, in a five-county area.

---

prosecutor during his closing address to the jury were so prejudicial as to amount to prosecutorial misconduct; (2) A reference to "photographs" by a Commonwealth witness introduced evidence of other crimes; (3) The court committed reversible error in its charge on accomplices; (4) Rebuttal of appellant's alibi witnesses amounted to an enforcement of the now-suspended Rule 312, Pa.R.Crim.P., which required a defendant to notify the Commonwealth in advance of trial of the alibi witnesses he intended to call without affording the defendant reciprocal discovery. It should be noted that if any of these contentions were meritorious, the appellant would be granted a new trial. Because of our disposition of the case, it is unnecessary to discuss the substantive merits of these claims.

"Q. He with others?

"A. He and others, yes, sir.

"Q. And in each of these counties that these crimes took place, did Mr. Hendricks cooperate with the police?

"A. He did, yes, sir.

"Q. *Do you know whether or not Mr. Hendricks, as a result of his cooperation with the police, has ever had any threats made upon his life?*

"A. *He has.*" (Emphasis added).

At that point, defense counsel objected and moved for a mistrial. The court sustained the objection but denied the motion for a mistrial. The following side-bar discussion is highly pertinent:

"[DEFENSE COUNSEL]: May it please the Court, the District Attorney has asked this witness whether or not the cooperation of Morris Hendricks has resulted in any threats upon the life of Morris Hendricks. The only inference of this question is that this defendant made such threats and is therefore guilty. There is no proof of that .... The question was asked only to inflame and prejudice the jury. If they have proof of this defendant's threats, it's one thing; but they do not. The question can only have been asked to inflame the jury ....

"[DISTRICT ATTORNEY]: I don't think I can say anything. *I can prove what was stated.*

"[DEFENSE COUNSEL]: Then I would ask at this time for an offer of such proof.

"THE COURT: *He's not required to make an offer at this time.*" (Emphasis added).

The court then gave the following curative instructions: "Members of the jury, we have sustained the objection to the last question asked by ... [the] Assistant District Attorney. So you will just disregard that question, pay no attention to it. It has nothing to do with this case. You will not consider that in any way against this defendant. It's not evidence against him."

Evidence of this nature, however, is generally admitted to show the defendant's "consciousness of guilt." Professor McCormick categorizes intimidation of an adverse witness as an "admission by conduct": "As might be expected, wrongdoing by the party in connection with his case, amounting to an obstruction of justice is also commonly regarded as an admission by conduct. By resorting to wrongful devices he is said to give ground for believing that he thinks his case is weak and not to be won by fair means. Accordingly, a party's false statement about the matter in litigation, whether before suit or on the stand, his fabrication of false documents, *his undue pressure, by bribery or intimidation or other means,* to influence a witness to testify for him or to *avoid testifying,* his destruction or concealment of relevant documents or objects, his attempt to corrupt the jury, his hiding or transferring property in anticipation of judgment — all these are instances of this type of admission by conduct." *McCormick on Evidence,* §273 at 660 (2d Ed. 1972). (Emphasis added). Pennsylvania decisions have also held that admissions by conduct are properly introduced to show consciousness of guilt: "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." *Commonwealth v. Osborne,* 433 Pa. 297, 302-303, 249 A.2d 330 (1969), quoting *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964). See also *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A.2d 743 (1953) (attempted destruction of evidence admissible as a circumstance from which guilt may be inferred); *Commonwealth v. Petro,* 115 Pa. Superior Ct. 388, 176 A. 46 (1934) (defendant's attempt to intimidate potential Commonwealth witnesses properly admitted).

Although it is a "fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive

evidence of his guilt of the present charge ...", *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373 (1972), admissions by conduct may still be introduced. The courts have usually held that "the inference from obstructive conduct by the adversary will not supply a want of proof of a particular fact essential to the proponent's case." *McCormick,* supra at 662. Thus, an admission of conduct can only be used in addition to other proof to "form the basis ... from which guilt may be inferred." *Commonwealth v. Osborne,* supra at 303, 249 A.2d at 333. For example, in *Commonwealth v. Coyle,* supra, our Supreme Court held that evidence relating to defendants' flight in order to avoid arrest was properly admitted despite the fact that the Commonwealth also introduced evidence of other crimes: "It is strongly urged that the proof at trial of the Coyles' other crimes ... so beclouded the main issue that it resulted in unfairly influencing the jury's determination of guilt, citing, *U.S. ex rel. Scoleri v. Banmiller,* 310 F.2d 720 (1962). If the crimes involved were not directly related to the crime and issue on trial, there might be merit to this contention. However, all of these crimes were so closely connected with the Kane killing, either in establishing the motive therefore or the consciousness of guilt and the means employed to escape arrest, that the jury had the right to hear and consider this evidence." 415 Pa. at 394, 203 A.2d at 790. In the instant case, therefore, evidence that appellant had threatened to kill the Commonwealth's chief witness could be admitted to show appellant's consciousness of guilt.

The present case is difficult because it arises in a somewhat peculiar procedural context. Assuming that the District Attorney did in fact have proof that appellant threatened Hendricks,[6] the court below may

---

6. Because we do not know whether the Commonwealth had the proof to support its contention, it would be highly unfair to treat this case, as appellant's trial counsel attempted to do, as involving prosecutorial misconduct.

have erred in sustaining the objection. From the Commonwealth's viewpoint, because appellant was convicted, any conceivable error must be regarded as harmless. From appellant's viewpoint, however, the court allowed the trial to continue, despite the fact that highly prejudicial testimony had been placed before the jury which may or may not have been true.

There can be no doubt that admissions by conduct can be extremely prejudicial: "A question may well be raised whether the relatively modest probative value of this species of evidence is not often outweighed by its prejudicial aspects. The litigant who would not like to have a stronger case must indeed be a rarity. It may well be that the real underpinning of the rule of admissibility is a desire to impose swift punishment, with a certain poetic justice, rather than concern over niceties of proof. In any event, the evidence is generally admitted." *McCormick*, supra at 661. In the instant case, the Commonwealth introduced testimony which could result in only a single inference: that appellant or someone under his control, had threatened the life of his principal accuser. If some other inference could result, the evidence would be totally irrelevant. In the interests of fairness, it must be presumed that the effect of this testimony was "to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Trowery*, 211 Pa. Superior Ct. 171, 174, 235 A.2d 171 (1967). We cannot assume that the jury, once having inferred that appellant had threatened to kill Hendricks, could strike this testimony from their minds and render an impartial verdict.

The lower court, faced with a difficult evidentiary problem, attempted to avoid its resolution: it refused the Commonwealth's offer of proof, sustained the objection, but allowed the trial to continue. It would have been fairer to both sides for the court to have accepted the offer of proof, and then decide whether the probative

value outweighed the prejudicial impact. Had the court decided that the Commonwealth could not support its claim, it should have declared a mistrial; the evidence is simply too prejudicial to be cured by instruction. In the present context, extremely prejudicial testimony was left for the jury's consideration without any proof whatsoever as to its truth.[7] This was reversible error.

The judgment of sentence imposed pursuant to Indictment No. 228 is reversed, and the case is remanded for a new trial. The judgment of sentence imposed pursuant to Indictment No. 229 is affirmed.

JACOBS, PRICE, and VAN DER VOORT, JJ., dissent as to Indictment No. 228.

CONCURRING OPINION BY CERCONE, J.:

While I agree that appellant is entitled to a new trial with respect to his conviction for burglary on Indictment No. 228, I cannot agree with the rationale proffered by Judge HOFFMAN's opinion in support of that result.

The determination of whether a mistrial should be granted rests squarely in the discretion of the trial court, and that question will vary with the facts of a particular case. 88 C.J.S., Trial §36. Hence, the refusal of the trial court to grant a mistrial may only be reversed in a flagrant case. *Gregg v. Fisher*, 377 Pa. 445 (1954); *Cook v. Erie Electric Motor Co.*, 225 Pa. 91 (1909). Since the question of a mistrial necessarily depends largely on the atmosphere of the trial, appellate courts are in a poor position to review the propriety of the court's refusal of a mistrial motion. *Stephens v. Sulkin*, 280 Pa. 211 (1924). In the instant case the trial court could either have permitted the Commonwealth's offer of proof to establish the relevance of the alleged threats, or it could have determined that the issue was not sufficiently important

---

7. If in fact the Commonwealth did not have proof that appellant threatened to kill Hendricks, appellant's contention that the question was asked solely to inflame the jury would no doubt be meritorious.

to justify such a diversion. The court having chosen the latter course, it correctly and forcefully admonished the jury to disregard the testimony, and stated that the threats were not evidence against appellant. Given this curative instruction quoted in the majority opinion, from which the jury would logically infer that the threats could not be linked to appellant, I submit that the court acted well within its discretion in refusing to grant appellant's mistrial motion. I do not think that we should so readily presume that a jury will disregard a court's instructions in situations where an improper appeal to the passions of the jury, calculated to be inflammatory and prejudicial, has not been made. Judge HOFFMAN's opinion today evinces the very scepticism for jury instructions which we recently condemned in *Commonwealth v. Williams*, 230 Pa. Superior Ct. 72 (1974). There is nothing in the facts of the instant case to justify our reaching a different conclusion herein.

I do find error, however, in the court's permitting an investigating police officer to testify as to his informant's selection of appellant's photograph from an array shown to the informant at the state police barracks. At trial, under examination by the assistant district attorney, the following testimony transpired:

"BY MR. BARO:

Q. Well, in your own words, then, Trooper Brunozzi, what did you do as a result of the information you received from Morris Hendricks?

A. We continued our investigation. On the 11th of June, '71, at the Downingtown Barracks, Morris Hendricks identified Joseph Markle, the gentleman sitting over there (indicating), as the person he, along with Thomas McDonald, burglarized the home of Miller in Berks County.

MR. BERNHART: Again, I object to this. There's no foundation, it's hearsay and it's a conclusion. I ask that that be stricken.

MR. BARO: Your Honor, I'll develop — he says that

Morris Hendricks identified Joseph Markle, and that was at the barracks, I assume?

THE WITNESS: Yes, sir.

BY MR. BARO:

Q. Was Joseph Markle there?

A. No, sir.

Q. How did he identify him at that time?

MR. BERNHART: I object, Your Honor.

THE COURT: Answer the question.

THE WITNESS: By using photographs.

MR. BERNHART: Your Honor, I ask for a mistrial.

THE COURT: Motion refused.

BY MR. BARO:

Q. How many photographs did you have present at that time?

A. Nine, sir.

Q. And then he identified the photograph of Joseph Markle; is that right?

A. That's correct, yes, sir.

Q. And is this the same person who he had previously identified or said to you that was 'Joe from Philly?'

MR. BERNHART: I object to that question.

THE COURT: On what grounds?

MR. BERNHART: As leading.

THE COURT: It is leading. Objection sustained.

BY MR. BARO:

Q. Will you state whether or not the Joseph M. Markle that he identified by the use of the photograph was 'Joe from Philly?'

A. Yes, sir."

The following day, apparently after counsel had a full opportunity to argue the admissibility of the photographic identification, the court instructed the jury that they could not consider the previous day's identification testimony of Trooper Brunozzi as evidence against appellant. Undoubtedly in a dilemma, the court did not refer to the question of the jury's likely inference that

appellant had a prior criminal record because of the existence of police photographs of him. The instruction, therefore, did not cure the problem with which I am now concerned.

In *Commonwealth v. Allen*, 448 Pa. 177, 182 (1972), our Supreme Court stated in a unanimous decision: "Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed." Under the circumstances of the photographic reference in the instant case, which certainly was not a passing reference likely to go unnoticed, the jury would naturally infer that the witness had been shown police photographs, or mugshots, thus leading them inexorably to the conclusion that appellant had previously engaged in criminal conduct. The Commonwealth points to nothing in the record which could serve to militate against that inference. See *Commonwealth v. Turner*, 454 Pa. 439 (1973). Hence, the instant case is virtually indistinguishable from *Commonwealth v. Taylor*, 460 Pa. 616, 334 A.2d 261 (1975), so that the reference effectively destroyed appellant's presumption of innocence and entitles him to a new trial. *Id.* at 183. See also *Commonwealth v. Trowery*, 211 Pa. Superior Ct. 171, 173-74 (1967).

I would therefore reverse the judgment of sentence on Indictment No. 228, and remand for a new trial, solely on the basis of the improper reference to the photographic identification.

SPAETH, J., joins in this concurring opinion.