**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL BOZIER | : | |
| | : | |
| Appellant | : | No. 766 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 23, 2022
In the Court of Common Pleas of Dauphin County
Criminal Division at CP-22-CR-0000240-2018

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                      **FILED:  JANUARY 6, 2023**

Michael Bozier (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered after a jury convicted him of one count each of possession with intent to deliver cocaine (PWID) and criminal use of a communications facility.[1]  After careful review, we affirm.

The trial court recounted the factual and procedural history as follows:

[Appellant] was investigated through use of a confidential informant (CI) on two separate occasions.

The first incident occurred on October 20, 2017.  On that date, Detective [Corey] Dickerson testified that he used the CI to reach out through text message to [Appellant] to purchase a quarter ounce of cocaine.  Detective Dickerson watched the text message exchanges between the CI and [Appellant].  Once an

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512.

agreement was made to meet at a Turkey Hill [store] to purchase cocaine for $450, Detective Dickerson provided the Cl with that amount of money. Detective Dickerson searched the Cl to ensure he had no drugs or contraband, then drove the Cl to the agreed upon location to meet with [Appellant]. After dropping off the Cl, Detective Dickerson and multiple other investigating officers watched the Cl get into a black Nissan Altima, driven by [Appellant].

[Appellant] first drove to a Sunoco gas station where the investigating officers were able to obtain photographs that showed both [Appellant's] face as well as the Cl in [Appellant's] vehicle. [Appellant] then drove the Cl to another location in the area of 15th Street and Swatara Street in Harrisburg, where the deal was consummated. [Appellant] briefly left his vehicle, with the Cl still in it, to get into a nearby Durango. [Appellant] then returned to the Altima where the CI remained. Detective Dickerson explicitly testified that [Appellant's] vehicle was under constant surveillance and no one but [Appellant] was ever in the vehicle with the Cl. Following the transaction, the Cl left [Appellant's] vehicle. The Cl then immediately provided the substance he purchased from [Appellant] to Detective Dickerson.

Following his testimony regarding the transaction, Detective Dickerson then read through pages of text message exchanges between [Appellant] and the Cl, which were introduced as exhibits to the jury. The texts discussed location for the transaction, the type of drug to be purchased, and the price.[2]

\*\*\*

During the morning recess of the jury trial, which was held on the third floor of the courthouse, [Appellant] went to the second floor where the District Attorney's offices are located and

---

[2] The jury acquitted Appellant of all charges pertaining to the second transaction that occurred on November 20, 2017, "in a narrow alley, which Detective Dickerson admitted made surveillance difficult." Trial Court Opinion, 7/22/22, at 4 (citation to notes of testimony omitted). "A white Infinit[i] with tinted windows pulled into the alley after the Cl arrived but Detective Dickerson was unable to visually identify if Defendant was the one driving the target vehicle[, and was not able to get any photos or video to show [Appellant's] face[.]" *Id.*; *see also* N.T., 9/16/20, at 58, 78-79, 92.

where the Cl was waiting until it was his turn to testify. [Appellant] did this on two occasions, both times speaking with the Cl, who was to be called as a witness. When this matter was brought to the attention of the court, [Appellant] was advised that he must stay on the third floor and that he was not to approach the Cl.

Following the lunch recess, it was brought to the attention of the court that Detective [Nicholas] Ishman was monitoring [Appellant's] Facebook account. The account used the name Mike Lowery but contained a profile picture of [Appellant]. This account included a post with a picture of the Cl sitting outside of the District Attorney's office. The quote with the picture read, "Look at this nigga outside the d.a office."

An additional post from the same Facebook page was also admitted as Exhibit 16, which again showed a picture of the Cl. The send message contained a quotation reading "The "three rat emojis" c.i. is home how [*sic*] be careful y'all."

Trial Court Opinion, 7/22/20, at 2-4 (record citations omitted, footnote added).

A jury trial took place in September 2020. As noted, the jury found Appellant guilty of the charges arising from the October 2017 drug buy but acquitted him of identical charges arising from the November 2017 drug buy. On March 23, 2022,[3] following receipt of a pre-sentence investigation report, the trial court sentenced Appellant to an aggregate sentence of 2-5 years in prison. Appellant did not file a post-sentence motion. Appellant filed a timely notice of appeal on April 18, 2022.

---

[3] Appellant failed to appear for his original sentencing date. He was eventually located in New York State. Trial Court Opinion, 7/22/22, at 1 n.1.

During the pendency of the appeal, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Ultimately, "the [trial] court allowed [Appellant] … to file a *nunc pro tunc* post sentence motion on May 10, 2022, requesting a new sentence and a new trial." Trial Court Opinion, 7/22/22, at 2. The trial court denied the motion on May 13, 2022. Appellant filed a second notice of appeal on May 17, 2022.[4]

Appellant raises a single issue on appeal.

> Whether the trial court abused its discretion in admitting evidence of an alleged Facebook post accusing the affiant of being a "rat" when the evidence was not probative of guilt, and irrelevant to the issue of whether [Appellant] sold narcotics?

Appellant's Brief at 4.

In reviewing Appellant's challenge to the admission of evidence, we recognize,

> admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (citations omitted). Our Supreme Court has explained generally, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the

---

[4] Appellant and the trial court both complied with Pa.R.A.P. 1925.

prejudice/probative value weighing which attends all decisions upon admissibility." ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007).

Appellant contends the trial court erred in admitting the evidence regarding Appellant's

> views and comments about the C.I.'s cooperation with the District Attorney's Office, as it inflamed the jury's ability to accurately judge the PWI[D] case. The probative value of the evidence is *de minimis*, while its prejudicial effect allowed the jury to judge [Appellant's] behavior during trial as opposed to the facts of the case.

Appellant's Brief at 14. Appellant acknowledges that evidence a criminal defendant attempted to intimidate a witness is "admissible to show conduct seeking to prevent or circumvent the judicial process." ***Id.*** at 17. However, he contends the instant matter "differs from prior witness intimidation" cases because "the comments were not directed at the witness to prevent his actual testimony." ***Id.***

> Here, the trial court reasoned:

> The court admitted the social media messages into evidence because their probative value outweighed their prejudicial effect. The social media messages were posted by [Appellant] about the CI who was [in court] to testify regarding the incidents when he bought drugs from [Appellant]. The probative value of these messages is high as it connects [Appellant] to the CI and therefore to the drug transactions. [Appellant's] actions of taking pictures of the CI and then posting the pictures with threatening remarks shows his concern about the CI's testimony. His effort to intimidate the CI by making the posts sheds light on the relationship between the parties and could be considered by the jury as consciousness of guilt. ***See***, ***Commonwealth v. Markle***, 239 Pa. Super. 505, 514-515, 361 A.2d 826, 830 (1976). On the other hand, the jury was not aware of the court's direction to [Appellant] to remain on the third floor of the courthouse and to

have no contact with the Cl. The fact that the social media messages demonstrated [Appellant's] violation of the court's direction would therefore not be known to the jury. Consequently, the court was within its discretion to determine that the probative value of the social media messages outweighed any prejudicial effect.

Trial Court Opinion, 7/22/22, at 5-6.

Our independent review of the relevant law and the certified record confirms the trial court's analysis and conclusion. Our Supreme Court "has long recognized that any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2017) (citation omitted). *See also Commonwealth v. King*, 959 A.2d 405, 417-18 (Pa. Super. 2008) (admission of testimony that, several months prior to trial, defendant was seen wearing t-shirt which advocated killing informants/snitches was relevant and not unduly inflammatory). Moreover, "all relevant Commonwealth evidence is meant to prejudice a defendant [and] a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration[.]" *Commonwealth v. Dula*, 262 A.3d 609, 633 (Pa. Super. 2021) (citation omitted). The record confirms Appellant received a fair trial, and the admission of the Facebook posts was not unfairly prejudicial under these circumstances.

In any event, even if the trial court erred in admitting the Facebook posts, the error would be harmless. The harmless error doctrine "reflects the

reality that the accused is entitled to a fair trial, not a perfect trial."

***Commonwealth v. Hairston***, 84 A.3d 657, 671 (Pa. 2014). Further:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Id.*** at 671–72.

> Appellant contends the error was not harmless because it
>
> forced the jury to believe [Appellant] was an unlawful person, seeking to intimidate a state's witness. The social media posts hampered the jury's ability to weigh the state's case on a PWI[D] offense because the jury now had to consider whether this conduct was meant to intimidate the C.I. This taints the adjudication of the PWI[D] case with a mini trial considering whether [Appellant] engaged in witness intimidation.

Appellant's Brief at 20. Appellant does not point to anything in the record to support this contention.

Our review discloses the Commonwealth presented the jury with evidence of two separate drug transactions. The jury found Appellant guilty of the transaction documented by photographs of Appellant and the CI, and where officers identified Appellant as the man who sold drugs to the CI.[5] The jury acquitted Appellant of the charges from the second transaction, where

---

[5] Appellant has not challenged the sufficiency of the evidence underlying his convictions.

police could not maintain surveillance because of the location of the buy; document the transaction with photographs; and/or identify Appellant as the seller. **See** Trial Court Opinion, 7/22/22, at 2-4 (summarizing the different evidence underlying each transaction); **see also** N.T. 9/16/20, at 32-43, 45-65, 79, 92. Thus, the verdicts demonstrated the jury's ability to properly weigh the evidence and the lack of "taint" caused by any purported error. Appellant's issue merits no relief. **See Commonwealth v. Green**, 162 A.3d 509, 522 (Pa. Super. 2017) (holding any error in admission of evidence was harmless where "jury was able to sort out the relevant evidence, acquit Appellant [of certain offenses] and convict him solely of [one offense]. Given the verdict, we hold that any prejudicial effect associated with [the admission of the disputed evidence] was *de minimis* by comparison to the properly admitted and uncontradicted evidence of Appellant's guilt.").

We therefore affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2023