436 A.2d 645

**COMMONWEALTH of Pennsylvania**

v.

**Steven A. JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued June 12, 1979.

Filed Oct. 23, 1981.

568

Sara Duffy, Philadelphia, for appellant.

Denis P. Cohen, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

STRANAHAN, Judge:

This matter is an appeal from the judgment of sentence imposed upon the appellant following his conviction on four counts of robbery,[1] one count of burglary,[2] one count of criminal conspiracy,[3] and one count of possession of an instrument of crime.[4] We affirm.

The facts of this case are as follows: At approximately 1:15 p. m. on September 27, 1976, the appellant and Jerome Parks stopped James Dixon as he was leaving the home of

---

\* President Judge John Q. Stranahan of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

   Judge Leonard Sugerman of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S. 3701.

2. 18 Pa.C.S. 3502.

3. 18 Pa.C.S. 903.

4. 18 Pa.C.S. 907(a).

Gladys Drayton at 806 South 13th Street, Philadelphia, Pennsylvania. The appellant put a gun to Dixon's head and, with the help of Parks, pushed him back into the Drayton house. Once inside the house, Dixon was taken to the dining room where several people were playing cards at the time. At that point, one of the intruders shouted, "This is a stick-up" and ordered everyone present to lie on the floor. While the appellant continued to hold the gun to Dixon's head, a third man proceeded to rob the people located in the dining room. Those people included Gladys Drayton, Alonzo Hart, Harry McNeal and Dixon. During this time, Parks remained in the dining room hallway behind the appellant and Dixon. Once the robberies were completed, the appellant and Parks ran out of the house. The incident lasted approximately five minutes.

At the time this incident took place, the Drayton house was under surveillance by Detectives Simerson and McGoldrick of the Philadelphia Police Force. They were in plain clothes and in an unmarked car.

Detective Simerson saw the appellant and Parks enter the Drayton house. Approximately five minutes later, both Detective Simerson and Detective McGoldrick saw the appellant running from the Drayton house carrying a .45 caliber revolver and Parks following him. After leaving the house, the appellant and Parks fled on bicycles. Detectives Simerson and McGoldrick started to follow them. At that point, Gladys Drayton ran from the house screaming, "robbery, robbery." As a result, Detectives Simerson and McGoldrick began active pursuit of the appellant and Parks. There was an eight block chase. For a brief period of time, the officers lost sight of the appellant. When the officers overtook the appellant, Detective Simerson flashed his badge in the appellant's direction and shouted, "Police, pull over." The appellant did not. Instead, he pulled out his revolver and swung it at Detective Simerson. The appellant was then forced off his bike and taken into custody by Detectives Simerson and McGoldrick.

After the appellant was taken into custody, he was placed in a police wagon and transported to Broad and Christian Streets, one block from the site of the Drayton robbery. There, Gladys Drayton was waiting. She identified the appellant as "the one who had the gun and was going to kill the baby." This identification occurred within five minutes after the appellant had begun his flight from the Drayton house.

The appellant has raised sixteen issues for the Court's consideration. Those issues are as follows:

1. The appellant contends that the police lacked probable cause to arrest him.

2. The appellant contends that he should have been informed of his *Miranda* rights as soon as he was taken into custody.

3. The appellant contends that his arrest should have been quashed because he was not promptly arraigned.

4. The appellant contends that the lower court erred in refusing to discharge him pursuant to Pa.R.Crim.P. 1100 where the suppression hearing did not take place until immediately before his trial commenced.

5. The appellant contends that the lower court erred in refusing to suppress the in-court identification testimony of Gladys Drayton, Alonzo Hart, Debra Battles, Detective Simerson and Detective McGoldrick.

6. The appellant contends that the lower court erred in refusing four of his requested points for charge on the question of the reliability of identification testimony.

7. The appellant contends that the trial judge erred in refusing to recuse himself after he had presided over the appellant's suppression hearing.

8. The appellant contends that the lower court erred in refusing to grant his motion for severance.

9. The appellant contends that the lower court erred in refusing to dismiss juror No. 3 after juror No. 4 allegedly told him of her fears of a possible threat to her safety.

10. The appellant contends that the lower court erred in overruling his hearsay objection to the testimony of Debra Battles concerning a statement Jeffery Savage made to the police shortly after the Drayton robbery took place.

11. The appellant contends that the lower court erred in permitting the Commonwealth to cross examine defense witness, Russell McNish, as to McNish's use of heroin at the time the Drayton robbery took place.

12. The appellant contends that the lower court erred in denying him the right to cross examine Detective Steven Posivak in regards to a statement in a police report attributed to James Dixon.

13. The appellant contends that the lower court erred in overruling his objection to the introduction into evidence of the .45 caliber revolver seized from him at the time of his arrest.

14. The appellant contends that the lower court erred in ordering the jurors to initial their verdict slips.

15. The appellant contends that the lower court erred in refusing to grant his request to close after the Commonwealth.

16. The appellant contends that the lower court erred in refusing to grant his motion for a new trial on the basis of after-discovered evidence.

PROBABLE CAUSE

The appellant contends that Detectives Simerson and McGoldrick lacked probable cause to arrest him. In essence, the appellant argues that Detectives Simerson and McGoldrick did not have sufficient information within their possession to warrant a conclusion that the appellant had committed a robbery.

■ Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable man to conclude that an offense has been committed and the person to be arrested has committed that offense. *Commonwealth*

*v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). The facts and information within the arresting officer's possession used to determine whether or not probable cause existed may be derived from hearsay evidence. *Commonwealth v. Bosurgi*, supra.

In the case at hand, there is no question that Detectives Simerson and McGoldrick had probable cause to arrest the appellant. They saw the appellant enter the Drayton home with Parks. Five minutes later, they saw appellant run from the Drayton home carrying a .45 caliber revolver and attempt to leave the scene on a bicycle. A few moments later, they saw a woman run from the Drayton home and heard her scream "robbery, robbery." When they tried to stop the appellant, he swung his gun at Detective Simerson. In the opinion of this Court, those facts and circumstances are sufficient in themselves to warrant a reasonable man to conclude that a robbery had been committed and that the appellant had committed that robbery.

## *MIRANDA* WARNING

The appellant contends that he should have been informed of his *Miranda* rights as soon as he was taken into custody. Since he was not, the appellant argues that his arrest should have been quashed.

There is no requirement that *Miranda* warnings be given unless and until the police seek to question a suspect. *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976).

## DELAY IN PRELIMINARY ARRAIGNMENT

The appellant contends that there was an unnecessary delay between the time he was arrested and the time he was preliminarily arraigned. On the basis of that contention, the appellant asserts that his arrest should have been quashed.

There may or may not have been an unnecessary delay between the time the appellant was arrested and the time he was preliminarily arraigned. Even if there was, however, that fact would not require a court to quash the

appellant's arrest. Where there has been such a delay, a court must suppress any evidence obtained as a result of the delay. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). There is no requirement that an arrest be quashed for such a delay.

RULE 1100

The appellant contends that the lower court erred in refusing to discharge him pursuant to Pa.R.Crim.P. 1100 where the suppression hearing did not take place until immediately before his trial commenced. The appellant asserts that he was prejudiced by this situation in that there was no time to transcribe the notes of testimony from the suppression hearing for use by him during his cross examination of the Commonwealth's witnesses.

Initially, the Court must point out that the appellant has raised the wrong issue. The appellant does not contend that he was not brought to trial within 180 days after the criminal complaint was filed. The appellant merely asserts that he was prejudiced by the timing of the suppression hearing in relation to the start of his trial. Hence, the issue the appellant should have raised and the issue the Court will consider is whether or not the lower court abused its discretion in denying the appellant's motion for a continuance.

The refusal to grant a continuance to enable defense counsel to obtain a transcript of the suppression hearing for use in cross examination at trial is grounds for reversal only when a defendant can show that he was actually prejudiced by that refusal. *Commonwealth v. McKelvie*, 471 Pa. 541, 370 A.2d 1155 (1977).

The appellant has neither alleged nor shown that he was actually prejudiced by the lower court's refusal to grant a continuance. All the appellant has done is made a general and unsupported allegation of prejudice. The appellant's claim of prejudice is negated by the fact that the lower court made available the services of a court reporter to the appellant's attorney throughout the appellant's trial for the

purpose of reading back portions of the suppression hearing testimony upon request. See *Commonwealth v. McKelvie*, supra.

In an attempt to show that he was prejudiced by the lower court's refusal to grant a continuance, the appellant asserts that on two occasions, the trial judge refused his request to have the court reporter read back portions of the suppression hearing testimony. On both those occasions, however, the appellant did not make such a request. On each occasion, the appellant only asked for a copy of the suppression hearing testimony. He did not ask to have the court reporter read back portions of the suppression hearing testimony.[5]

## IN-COURT IDENTIFICATION TESTIMONY

The appellant contends that the lower court erred in refusing to suppress the in court identification of him as the man with the gun during the robbery by Gladys Drayton, Debra Battles, Alonzo Hart, Detective Simerson and Detective McGoldrick. The appellant's objection to the identification testimony of Drayton, Battles and Hart is based on his assertion that their identification was the result of an unduly suggestive confrontation. As to the identification testimony of Detectives Simerson and McGoldrick, the appellant asserts that their testimony was not credible because they could not have gotten a good look at him from where they were located at the time he allegedly fled from the Drayton home.

Where an in-court identification has a basis sufficiently independent from an unduly suggestive confrontation, that identification is admissible regardless of any taint found to exist in the confrontation procedure. *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974). Such a basis may be found where the witness had a sufficient

5. On the first occasion, the court reporter did read back the requested portion of the suppression hearing testimony. On the second occasion, there was no inconsistency in the testimony. Hence, a copy of the suppression hearing transcript would have been of no use to the appellant on that occasion.

opportunity to observe the individual during the crime. *Commonwealth v. Diggs*, 260 Pa.Super. 349, 394 A.2d 586 (1978), or where the witness had seen the individual on occasions prior to the time the crime was committed. *Commonwealth v. McKelvie*, supra.

As to the confrontation involving Gladys Drayton, the appellant asserts that her in-custody-at-the-scene identification of him as the "man with the gun" was unduly suggestive.

■ Absent some special elements of unfairness, however, a prompt in-custody-on-the-scene identification is not unduly suggestive. *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974).

■ This Court finds that there were no special elements of unfairness in Drayton's prompt in-custody-on-the-scene identification of the appellant. The identification took place within five minutes after the robbery. The police never told her that the appellant was one of the robbers. They simply asked her if he was one of the robbers. Under those circumstances, it is clear that Drayton's on-the-scene identification of the appellant was not unduly suggestive.

Hence, Drayton's in-court identification of the appellant was not tainted by any unduly suggestive confrontation.[6]

As to the confrontation involving Debra Battles, the appellant asserts that her one on one identification of him at the police station was unduly suggestive.

■ That confrontation may or may not have been unduly suggestive. Whether it was or not, however, is immaterial because Battles had a sufficient basis for identifying the appellant independent from that confrontation. Prior to the robbery, Battles had seen the appellant in the neighborhood at various times. Although she did not know his name,

---

**6.** In addition, Drayton's in-court identification of the appellant originated from a basis clearly independent from her in-custody-on-the-scene identification. For a period of approximately two or three minutes during the robbery, she was able to look directly at the appellant's face while he held a gun to Dixon's head.

she recognized his face. Also, Battles clearly saw the appellant's face as he entered and left the Drayton home during the robbery.

As to the confrontation involving Alonzo Hart, the appellant simply asserts that an unduly suggestive confrontation occurred. The appellant does not point out when this confrontation occurred or why it was unduly suggestive.

■ Even if the Court assumes that such a confrontation did take place, however, Hart still had a sufficient basis for identifying the appellant independent from such a confrontation. Hart saw the appellant enter the Drayton home. During the robbery, he was only a few feet from the appellant and saw the appellant's face clearly for approximately three minutes.

■ As to the appellant's objections to Detectives Simerson's and McGoldrick's in-court identification, the appellant's argument deserves no comment. The question of credibility is one for the trier of fact, not the appellate courts.

## POINTS FOR CHARGE

The appellant contends that the lower court erred in refusing four of his points for charge on the question of the reliability of identification testimony.[7]

"It is well settled that [a] trial court is not required to accept the language of requested instructions submitted by

7. The requested points for charge were:
  7. The identification of strangers is proverbially untrustworthy.
  8. A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification... And, the dangers for the suspect are particularly grave when the witnesses' opportunity for observation was insubstantial and thus, his susceptibility to suggestion the greatest.
  9. Doubtless, a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease or liberty.
  11. The circumstances of witnesses viewing the suspect or suspects together with other witnesses and identifying a suspect in each other's presence is a procedure fraught with dangers of suggestion.

counsel, but is free to select its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury for its consideration." *Commonwealth v. Bey*, 249 Pa.Super. 185, 196, 375 A.2d 1304, 1310 (1977).

█ Our examination of the record discloses that the Court gave a complete and careful statement on the reliability of identification testimony in its charge to the jury. Hence, the lower court was not required to give the appellant's request points verbatim. *Commonwealth v. Bey*, supra.

RECUSAL

█ The appellant contends that the trial judge erred in refusing to recuse himself after he presided over the appellant's suppression. This contention is based on the appellant's assertion that the trial judge was prejudiced against him as a result of presiding over the suppression hearing. Hence, the appellant argues, he was denied a fair trial as a result of the trial judge's refusal to recuse himself.

The appellant was tried before a jury. Hence, the appellant would not have been prejudiced by the fact that the trial judge also presided over the appellant's suppression hearing. *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976).

SEVERANCE

The appellant contends that the lower court erred in refusing to grant his motion for severance. This contention is based on the appellant's assertion that he was prejudiced by being tried with the other defendants in this case since the identification witnesses did not agree on the identity of all of the robbers.

█ "[Q]uestions of consolidation or severance of defendants for trial rests in the discretion of the trial judge and his rulings on such matters will not be disturbed on appeal except for manifest abuse of discretion." *Commonwealth v. Tolassi*, 258 Pa.Super. 194, 199, 392 A.2d 750, 753 (1978). Where a conspiracy is alleged, the defendants should be

tried together unless it can be shown that one or more of the defendants will be actually prejudiced by doing so. *Commonwealth v. Tolassi*, supra.

In this case, the appellant and his co-defendants were charged with conspiracy.

■ After reviewing the record in this case, the Court finds that the appellant was not actually prejudiced by the lower court's refusal to grant his motion for severance.[8] The identification witnesses may have differed on the identity of the robbers in this case. All of the identification witnesses, however, identified the appellant as one of the robbers. Finally, all of the charges grew out of the same incident. Hence, separate trials would have resulted in a repetition of testimony and needless expenditures of time and money.

## REFUSAL TO DISMISS JUROR NO. 3

The appellant contends that the lower court erred in refusing to dismiss juror No. 3, William Hannan, after juror No. 4, Doris Moore, had allegedly told him of her fears of a possible threat to her safety.

■ Juror No. 4 did not tell juror No. 3 of her fears of a possible threat to her safety. Juror No. 4 merely told juror No. 3 that she had "heard something in the courtroom that [she] didn't think [she] should have" and asked his advice as to how she should handle that situation. Juror No. 3 told her to contact the trial judge. By his own admission, juror No. 3 did not know the nature of juror No. 4's problem. Juror No. 3, therefore, could not have been prejudiced by juror No. 4's fears. Hence, the lower court did not err in refusing to dismiss juror No. 3.

8. The appellant also asserts that he was prejudiced by the lower court's decision to suppress certain out of court identifications by Commonwealth witnesses. At the suppression hearing, however, the lower court stated that it would conduct in camera hearings, if necessary, to insure the appropriate limitations when co-counsel desired to raise out-of-court identifications. Hence, any possible prejudice to the appellant was eliminated.

## HEARSAY TESTIMONY OF DEBRA BATTLES

The appellant contends that the lower court erred in overruling his hearsay objection to the testimony of Debra Battles concerning a statement Jeffery Savage made to the police shortly after the Drayton robbery took place. The testimony in question was that she over-heard Jeffery Savage give the police a description of the robbers.

This issue was brought before this Court by the appellant's co-defendant, Jerome Parks, in his appeal from the judgment of sentence imposed upon him following his conviction on the various charges filed against him as a result of his involvement in the Drayton robbery. *Commonwealth v. Parks*, 273 Pa.Super. 506, 417 A.2d 1163 (1979). In that case, this Court held that the testimony in question was hearsay and that the lower court erred in overruling the hearsay objections to that testimony. *Commonwealth v. Parks*, supra. This Court also held, however, that the trial judge's error was harmless beyond a reasonable doubt because Parks had been positively identified as one of the robbers by Gladys Drayton, Debra Battles, Detective Simerson and Detective McGoldrick. Hence, "Battle's testimony that she overheard Jeffery Savage providing police [with] a description of the fleeing robbers could not have contributed significantly to the verdict reached." *Commonwealth v. Parks*, supra, at 1170.

In the case at hand, the appellant was positively identified as one of the robbers by Gladys Drayton, Debra Battles, Alonzo Hart, Detective Simerson and Detective McGoldrick. This court finds, therefore, that the trial judge's error in overruling the appellant's hearsay objection was harmless beyond a reasonable doubt. *Commonwealth v. Parks*, supra.

## CROSS EXAMINATION OF RUSSELL McNISH

The appellant contends that the lower court erred in permitting the Commonwealth to cross examine defense witness, Russell McNish, as to McNish's use of heroin at the

time the Drayton robbery took place.[9]   This contention is based on the appellant's assertion that the Commonwealth failed to show that the use of two to three bundles of heroin a day, as McNish was using at the time, adversely affects the user's powers of observation or memory.   Hence, the appellant argues, the Commonwealth's purpose in questioning McNish about his drug usage was to impeach his credibility by blackening his reputation and not to impeach his credibility by showing that his powers of perception were impaired at the time.

"Questions pertaining to the use of drugs or alcohol are proper when asked for the purpose of attacking [the] credibility of [a] witness by showing at the time of the event to which he testified his powers of observation and memory were impaired so that his recollection and account of the experience might be inaccurate." *Commonwealth v. Duffy,* 238 Pa.Super 161, 163, 353 A.2d 50, 57 (1975).

There is no requirement that the Commonwealth introduce scientific evidence that use of the drug in question weakens a person's powers of observation or memory before or after cross examining a witness as to his use of that drug at the time of the event in question.   Hence, the lower court did not err in permitting the Commonwealth to cross examine Russell McNish as to his use of heroin on the day the Drayton robbery took place.

## CROSS EXAMINATION OF STEVEN POSIVEK

The appellant contends that the lower court erred in denying him the right to cross examine Detective Steven Posivak in regards to a statement in a police report attributed to James Dixon.   That statement indicated that Dixon believed that the man who held the gun to his head during the Drayton robbery had also robbed him at an earlier date. The appellant, however, could not have committed the earlier robbery since he was incarcerated at the time it took

---

**9.** In essence, McNish's testimony on direct examination was that he saw Detectives Simerson and McGoldrick arrest the appellant and, at the time, the appellant did not have a gun.

place. The appellant wanted to use that statement to impeach the credibility of the police report and James Dixon's testimony.

The police report in question was never introduced into evidence at the appellant's trial. Hence, its credibility was wholly irrelevant to the proceedings.

At the appellant's trial, James Dixon testified, in essence, that an unidentified man had put a gun to his head during the Drayton robbery. Dixon did not and could not identify the appellant as that man. Hence, there was no identification testimony to be impeached.

GUN

The appellant contends that the lower court erred in overruling his objection to the introduction into evidence of the .45 caliber revolver seized from him at the time of his arrest. In support of this contention, the appellant points out that none of the robbery victims identified the gun as the one the appellant held to James Dixon's head during the robbery. Hence, the appellant argues, the Commonwealth failed to prove that the gun seized from him when he was arrested was the gun used during the robbery.

In *Commonwealth v. Wortham*, 235 Pa.Super. 25, 342 A.2d 759 (1975), this Court held that:

> Positive testimony that the challenged item is the actual weapon used in the commission of the crime is not required prior to its introduction into evidence... All that is demanded is that a proper foundation be laid revealing circumstances sufficient to justify an inference of the likelihood of the weapon's use in the course of crime...
> Furthermore, the admission of such demonstrative evidence is a matter within the discretion of the trial judge, and absent an abuse of discretion, that decision will not be disturbed. *Commonwealth v. Wortham*, supra, 235 Pa.Super. at 31 and at 763, 342 A.2d 759.

In the case at hand, Gladys Drayton and Alonzo Hart testified that the appellant used the only gun in the robbery. Debra Battles testified that the appellant held a .45 caliber

revolver to James Dixon's head. Detective Simerson identified the challenged revolver as the same gun he saw the appellant carrying in his hand when he fled from the Drayton home and the same gun the appellant pulled from his belt when he ordered the appellant to stop.

On the basis of that evidence, this Court finds that there was a proper foundation for the introduction of the challenged .45 caliber revolver and, as a result, that the lower court did not abuse its discretion in admitting that gun into evidence.

## VERDICT SLIPS

The appellant contends that the lower court erred in ordering the jurors to initial their verdict slips. This contention is based on the appellant's assertion that doing so would infringe on the appellant's right to have the jury polled after the verdict was announced since it might restrict the jurors' freedom to change their minds after the verdict had been announced.

This issue was also brought before this Court by the appellant's co-defendant, Jerome Parks, in his appeal. *Commonwealth v. Parks*, supra. In that case, this Court stated:

We disapprove of the trial judge's instruction, and take this occasion to say that it should not be used again, for it runs too great a risk of diminishing, or undermining, a fundamental right of the accused. Were this case close, we should award a new trial, so that the risk might be entirely avoided. As noted above, however, the evidence of the robbery and of appellant's participation is so strong that we do not believe that a new trial is required. Other parts of the judge's instruction made it clear that each juror must make an independent judgment of appellant's guilt. The judge charged that "each juror must decide the case for himself," and should not agree to the verdict if it does "violence to individual judgment." (N.T. 904). The judge further charged that "a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous." (N.T. 904). Given these in-

structions, we believe that it would be an overstatement to say that the instructions to initial their verdict slips worked a defacto denial of the appellant's right to poll the jurors. *Commonwealth v. Parks*, supra, at 1171.

In the case at hand, evidence of the appellant's participation in the Drayton robbery is as strong as that of Parks' participation, if not stronger. Hence, this Court finds that the lower court did not commit reversible error by instructing the jurors to initial their verdict slips.

## ORDER OF CLOSING

The appellant contends that the lower court erred in refusing to grant his request to close after the Commonwealth. This contention is based on the appellant's assertion that making the defense close before the Commonwealth is unconstitutional.

The appellant's contention is without merit. Requiring the defense to close before the Commonwealth is constitutional. *Commonwealth v. Brown*, 470 Pa. 274, 368 A.2d 626 (1976).

## AFTER–DISCOVERED EVIDENCE

The appellant contends that the lower court erred in refusing to grant him a new trial on the basis of after-discovered evidence. The after-discovered evidence in question is the testimony of Robert Battles, an eyewitness to the crime who was not called at the appellant's trial, that the appellant was not one of the men who committed the Drayton robbery, and a recantation by Gladys Drayton to the effect that she was no longer sure that the appellant was one of the men who robbed her.

On April 25, 1978, the lower court held an evidentiary hearing on this matter. The following evidence was introduced at that hearing: Robert Battles was present during the Drayton robbery. The appellant and the Commonwealth first became aware of this fact on the first day of the three day suppression hearing that proceeded the appellant's trial. Through-out the trial, Robert Battles lived with his sister,

Debra Battles, and his grandmother, Gladys Drayton. He was at the courthouse for the second day of the appellant's suppression hearing. While there, an assistant district attorney spoke to Battles in the hallway outside the courtroom. At that time, Battles told the assistant district attorney that there were four men involved in the robbery and he did not exculpate the appellant.

The appellant met Battles at the Holmesburg Prison after the appellant's trial. At that time, Battles agreed to do anything we could to help the appellant.

If called to testify, Battles would state that there were only two men involved in the robbery and the appellant was not one of them. The two men Battles would identify as being the robbers were Donald Robinson, who died before he could be brought to trial for his involvement in the robbery and Van McWhorter, who was acquitted of the robbery.

Finally, Gladys Drayton testified that she no longer was sure that the appellant was one of the men who robbed her. When asked whether or not she told the truth at the appellant's trial, however, Drayton responded, "I thought I was telling the truth. Like I still say, I seen somebody who looked just like them" and "the person with the gun looked like . . . Johnson [the appellant]."

▇ "A new trial in a criminal case will be awarded on the ground of after-discovered evidence where the evidence in question (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted." *Commonwealth v. Coleman*, 438 Pa. 373, 376–77, 264 A.2d 649, 651 (1970).

Applying that test to the after-discovered evidence in the case at hand, it is the opinion of this Court that the appellant is not entitled to a new trial on the basis of that evidence.

■   Robert Battles was clearly available during the appellant's trial.   The appellant, through the exercise of reasonable diligence, could have located Battles and interviewed him.   Moreover, Battles's testimony is not of such a nature and character that a different verdict would likely result if the appellant is granted a new trial.   First, Battles's credibility is suspect given his prior inconsistent statement to the assistant district attorney and the circumstances surrounding his agreement to help the appellant.   Second, the evidence against the appellant is overwhelming.

The change in Gladys Drayton's testimony is not evidence of such a nature and character that it would likely result in a different verdict if the appellant were re-tried.   At most, Drayton is no longer sure that the appellant is one of the men who robbed her.   She admits, however, that he looks like one of the men.   Given the other eyewitness identifications and the testimony of Detective Simerson, this Court finds that this change in Gladys Drayton's testimony does not entitle the appellant to a new trial.

The judgment of sentence is affirmed.

SPAETH, J., concurred in the result.