J-S45041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISRAEL E. SANABRIA, JR. | : | |
| | : | |
| Appellant | : | No. 745 MDA 2025 |

Appeal from the PCRA Order Entered May 8, 2025
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0001822-2021

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 06, 2026**

Israel E. Sanabria, Jr., appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court set forth the facts and procedural history of this case as follows:

> By criminal information filed June 7, 2021, [Sanabria] was charged with [a]ggravated [a]ssault – attempts to cause serious bodily injury or causes injury with extreme indifference, 18 Pa.C.S. § 2702(a)(1), and [f]alse [i]dentification to [l]aw [e]nforcement [o]fficer, 18 Pa.C.S. § 4914(a). The offenses occurred on February 6, 2021[,] in East Lampeter Township, Lancaster County, Pennsylvania. On November 18, 2022, [Sanabria] was found guilty of both offenses at the conclusion of a three-day jury trial.

---

[*] Retired Senior Judge assigned to the Superior Court.

Sentencing was not held until April 13, 2023, because new counsel had to be appointed after [Sanabria] filed a [*habeas corpus*] [p]etition and a complaint for violation of civil rights in the [United States d]istrict [c]ourt naming his trial counsel as the defendant and alleging his trial counsel violated [Sanabria's] civil rights. [This federal case was ultimately dismissed.] A ***Grazier***[1] hearing was held on February 10, 2023, and trial counsel was given leave to withdraw. On February 13, 2023, the trial court appointed conflict counsel for [Sanabria,] and appellate counsel was appointed on May 2, 2023.

At his sentencing, [Sanabria] entered into an open guilty plea for one of his open criminal matters[,] and he was sentenced on that information as well as four other criminal informations[,] including this case. [Sanabria] received a sentence of 7-1/2 years to 15 years for the aggravated assault conviction, for which the court found serious bodily injury, and [Sanabria] received a sentence of [four] months to one year for the false identification to law enforcement conviction. The court ran these sentences consecutively to the other sentences.

On April 21, 202[3], [Sanabria] filed a post-sentence motion to modify his sentence, which was denied. On May 3, 2023, [Sanabria] appealed all five sentences to [this Court] contending the trial court committed a manifest abuse of discretion by imposing consecutive sentences solely because [Sanabria] failed to accept responsibility for his behavior [factually underpinning the present appeal]. [Sanabria's judgment of sentence] was affirmed on January 31, 2024. On February 6, 2024, the Pennsylvania Supreme Court denied his [p]etition for [a]llowance of [a]ppeal.

[Sanabria] timely filed a *pro se* PCRA [p]etition on October 11, 2024. Counsel was appointed for him on November 13, 2024. After being granted an extension of time, counsel [amended Sanabria's petition, which was later dismissed by the court].

PCRA Court Rule 907 Notice, 4/2/25, at 1-3 (footnote and heading omitted).

---

[1] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

The court also cogently summarized the facts adduced at Sanabria's trial:

During his trial, a video of [Sanabria's] assault of the victim was played to the jury. The video was obtained from a surveillance camera in the elevator lobby of the motel where [Sanabria] and the victim were staying. The assault occurred on February 6, 2021.

The video begins with the victim running down the hallway of the motel n[either] wearing shoes [nor a] coat. The victim is seen getting into the elevator[,] but [Sanabria] came after her and got into the elevator with her. Sounds of the victim being slammed up against the elevator wall could be heard.

The video then showed [Sanabria] dragging the victim out of the elevator by her hair. [Sanabria] then calmly counted down from five and then threw the victim onto the floor. While the victim was on the floor, [Sanabria] again calmly counted down from five while telling her to get up or he would kill her. [Sanabria] was then seen winding a lanyard around his wrist. Attached to the lanyard was a satchel which was filled with coins. [Sanabria] swung the satchel into the victim's face as she tried to get up. As he struck the victim, coins were strewn throughout the lobby. [Sanabria] counted down from five again[,] and when the victim was finally able to get up, she walked down the hallway with [Sanabria]. [Sanabria] could be heard saying, "[S]ee what you did."

Because [Sanabria] and the victim were locked out of their room and saw that police had been called, they left by another exit but were located at another motel down the road. The victim was observed by Officer [Olivia] Mauro not to be wearing socks, shoes[,] or a coat even though it was very cold outside. There was blood all over [the victim's] hands[,] and she was missing two acrylic fingernails. Her face and nose were bleeding[,] and her right eye was bruised and swollen and almost shut. The victim's ear was swollen to the size of a golf ball and had a small cut with blood running down the side of her face. Photographs were taken and were admitted into evidence.

Medical testimony showed that the victim suffered fractures to her orbital bone and maxillary sinus. Her left ear was also re-injured

from when she had presented at the emergency room the day before claiming she had fallen on ice. The victim testified that the initial injury was actually caused by [Sanabria] repeatedly hitting her on her ear[,] and she lied about falling on ice.

The victim's testimony at the time of trial showed that she was homeless but had lived with [Sanabria] prior to that. They had been in a relationship for two and a half years. She admitted that she used cocaine on the night of the incident and left the room around midnight to get away from [Sanabria]. On cross-examination, she admitted that the reason [Sanabria] came after her was because she wanted to use meth[,] but he did not want to.

The victim described getting to the elevator but that [Sanabria] came and grabbed her by her hair and threw her to the ground. He then hit her in the face with the bag of quarters. She recalled everything going black and hearing a high pitch sound.

The victim was shown pictures of herself taken at the hospital. She testified about the nature of her injuries, treatment she received[,] and her recovery.

During the victim's testimony, telephone calls between the victim and [Sanabria] were played. During one call, [Sanabria] is heard telling the victim to come in and say that nothing happened.

On cross-examination, the victim was asked about her drug use and pending charges. A side-bar was held[,] and the Commonwealth said it would stipulate that there was no offer on pending charges. The victim was asked whether she had pending charges for possession of drug paraphernalia[,] and she admitted that she did. The victim further acknowledged that she lied to the police when she said she had not done cocaine and lied to the police about her name because she had a warrant out for her arrest for a probation violation.

[Sanabria] testified that he hit the victim to keep her from doing drugs and to keep her from humiliating herself and putting herself in danger. He explained that he hit her in the face with the bag of coins to get her attention[,] and the reason he would count down from five was because the victim had a childish mind. Throughout his testimony[,] he showed no remorse and instead blamed the victim for his actions.

> At his sentencing, and against the advice of his counsel, [Sanabria] spoke for half an hour during which he denigrated the victim. He told the [c]ourt that the victim was prostituting, drug trafficking, and setting people up so they could be robbed.

*Id.* at 3-7 (record citations and heading omitted).

Sanabria timely filed a notice of appeal from the court's dismissal of his PCRA petition and, on appeal, presents two issues, though formed and thereafter discussed as one omnibus question in violation of Pennsylvania Rule of Appellate Procedure 2119(a), for review: did the PCRA court err in dismissing his petition without a hearing where he presented sufficient evidence that: (1) the Commonwealth committed prosecutorial misconduct as defined by **Brady v. Maryland**, 373 U.S. 83 (1963), and its progeny; and (2) his trial counsel rendered ineffective assistance of counsel? **See** Appellant's Brief at 4, 10.

"Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error." **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.** Moreover, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa. Super. 2019) (cleaned up; citation omitted).

Sanabria claims that the court erred by not conducting an evidentiary hearing notwithstanding the two viable contentions asserted in his petition:

(1) a **Brady** violation; and (2) ineffective assistance of counsel. At both points, Sanabria "alleges there were factual claims that required an evidentiary hearing and without which [this Court] is incapable of making a ruling." Appellant's Brief at 13.

In addressing Sanabria's **Brady** averment first, we note that our Supreme Court has summarized the law surrounding **Brady** claims as follows:

> In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the **Brady** strictures: [(1)] the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; [(2)] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [(3)] prejudice ensued.

**Commonwealth v. Lambert**, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

At the final component, prejudice, it must be shown that there is "a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Commonwealth v. Bomar***, 104 A.3d 1179, 1189 (Pa. 2014) (citation and internal quotation marks omitted).

The substance of Sanabria's ***Brady*** assertion is limited to four sentences. In summary, he alleges that the victim was found in possession of narcotics, yet not prosecuted for the same, because the Commonwealth "gave her a deal[,]" evidence of which could have been used to impeach her. Appellant's Brief at 15. Nevertheless, the Commonwealth failed to provide such information regarding the alleged deal to him, resulting in a ***Brady*** violation. ***See id.***

We agree with the PCRA court's rejection of Sanabria's ***Brady*** allegation and adopt its rationale in full:

> [Sanabria] provides no basis for the crimes he alleges were committed by the victim even though he would have had available to him, at the time of trial and immediately thereafter, the victim's criminal record to ascertain whether charges of that nature were pending against her. Furthermore, the Commonwealth stipulated that it had not made any offer for pending charges.
>
> At trial, [Sanabria's] counsel brought up the victim's drug use and asked her whether she had pending charges for possession of drug paraphernalia. The victim admitted that she did[,] and she also admitted to doing cocaine the night of the incident and lying about her identity to police because there was a warrant out for her arrest due to a probation violation.
>
> Based on the record, [Sanabria's] allegation that there was a "secret deal" with the Commonwealth without anything more to substantiate it, is nothing but sheer speculation. Mere conjecture will not establish a ***Brady*** violation.
>
> It is also worth emphasizing that [Sanabria] cannot demonstrate

that evidence of a plea bargain, if one did exist, was material to his guilt. The video of his vicious assault on the victim was visceral and gut-wrenching. Taken with the testimony of the police officer who observed the victim's injuries shortly thereafter and the medical testimony, evidence of a deal between the victim and the Commonwealth would not have made any difference to the end result of a guilty verdict.

PCRA Court Rule 907 Notice, 4/2/25, at 10-11 (footnote and record citation omitted).

Our own review of the record reveals much of the same. At trial, the victim was asked whether she had a pending charge for use or possession of drug paraphernalia, to which she answered affirmatively. **See** N.T. Jury Trial, 11/18/22, at 275-76 (victim admitting to a pending charge in York County). The victim also admitted to using cocaine on the date of the incident. **See id**. at 276 (stating, further, that she lied to police about using that substance). As to the victim's pending York County charge, the Commonwealth indicated that it would "stipulate there is no offer whatsoever. The charges aren't even in [Lancaster County]." **Id.** at 274.

To the extent that Sanabria is alleging that the Commonwealth and victim entered into an undisclosed deal as it pertained to the Commonwealth's non-prosecution of potential drug charges against the victim stemming from the date of the incident underlying the instant case, he has offered nothing more than complete speculation that such agreement exists. Without any tangible indication whatsoever that a deal existed, e.g., some basis to demonstrate that the victim exchanged her testimony against Sanabria in

favor of favorable prosecution for the victim's pending charges, he has failed to persuade this Court that the PCRA court erred by finding no merit to his *Brady* violation claim.[2] Accordingly, because of the speculative nature of his underlying "deal" contention,[3] Sanabria is due no relief on this claim.

As to the ineffective assistance of counsel portion of Sanabria's argument, we emphasize that "counsel is presumed to be effective, and a petitioner must overcome that presumption to prove" his entitlement to relief. *Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015). Accordingly,

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019)

---

[2] Moreover, even assuming *arguendo* that such a deal existed, Sanabria has failed to substantively discuss, much less prove, that he suffered prejudice therefrom, *i.e.*, that disclosure would have led to a different trial outcome. Simply put, while the court elaborates on the "gut-wrenching" nature of the video demonstrating his actions that was played for the jury, a video that obviously exists independent of the victim's testimony, Sanabria does not contest its contents or inferences taken therefrom.

[3] Of course, this determination is in addition to his failure to show there was a reasonably probability disclosure of that "deal" would have resulted in a different outcome.

(cleaned up). The petitioner's failure to sustain any prong of the test defeats the claim. **See Commonwealth v. Rivera**, 199 A.3d 365, 374 (Pa. 2018). The Supreme Court of the United States has noted that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." **Strickland v. Washington**, 466 U.S. 668, 689 (1984). Nevertheless, while our system strives for fairness, a defendant is not entitled to a *perfect* trial. **See Commonwealth v. Rayner**, 153 A.3d 1049, 1058 (Pa. Super. 2016).

The thrust of Sanabria's ineffective assistance claim is that he supplied "information to trial counsel to use for impeachment purposes against the [victim] that [counsel] failed to use." Appellant's Brief at 17. In particular, Sanabria asserts that he "provided evidence to trial counsel that the [victim] had fabricated her statements to police officers. [Sanabria] alleged the [victim] admitted her injuries were caused by another man." **Id.** However, counsel made no inquiry into this "information" at trial. Moreover, Sanabria contends that "trial counsel failed to cross-examine the [victim] on her abuse of narcotics" and further question her as to her "alleged false accusations of

assault to the police previously regarding [Sanabria]." *Id.* at 17-18.[4]

In response, the court started by noting that Sanabria "does not specify what this impeachment evidence is outside of the less than favorable evidence his trial counsel elicited from the victim at trial[.]" PCRA Court Rule 907 Notice, 4/2/25, at 13-14. Therefore, the court could "only speculate as to what this evidence is based upon the statements [Sanabria] made at his sentencing regarding the victim." *Id.* at 14. The court summarized those statements as follows:

> At his sentencing, [Sanabria] stated that the victim is gang[-]affiliated, [has] had group sex, had people robbed, and young ladies raped. [Sanabria] complained that his attorney was not listening to him. He also stated that the victim was a prostitute and complained that this was not permitted to be brought up at trial.

*Id.* (record citations omitted). The court concluded that "[n]one of the statements made by [Sanabria] are relevant to his assault on the victim, and[,] even if they could be deemed relevant, their prejudicial effect would far outweigh their probative value, which [i]s why the trial court did not allow defense counsel to bring up the issue of prostitution." *Id.* at 15.

As expounded upon above, the victim was extensively cross-examined about her pending drug-related criminal charge, her drug use around the time she was assaulted by Sanabria, her lying to police, and the fact that she had

---

[4] As more fully discussed below, Sanabria has not provided any clear authority to demonstrate the admissibility of these allegations.

an open arrest warrant for a probation violation. Despite these topics being covered at trial, Sanabria *still* contends that he was entitled to an evidentiary hearing on his PCRA claim because it "is unclear what trial counsel's reasonable basis may be for failing to impeach the credibility of the complainant and sole witness of the assault." Appellant's Brief at 19.

We emphasize that "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Maddrey**, 205 A.3d 323, 328 (Pa. Super. 2019) (cleaned up; citation omitted). On appellate review, we ascertain whether the court abused its discretion in dismissing a petition without an evidentiary hearing. **See Commonwealth v. Wilson**, 273 A.3d 13, 18 (Pa. Super. 2022).

Sanabria alleges there was additional evidence of the victim's alleged improprieties but provides no credible indication that such evidence, in fact, exists.[5] Even assuming, for argument's sake, that Sanabria has evidence of, *inter alia*, the victim's abuse of narcotics or her former false accusations of assault against him, Sanabria has failed to demonstrate that such information would have been admissible at his trial. As such, it was not an abuse of discretion for the court to dismiss his petition without an evidentiary hearing

---

[5] In fact, Sanabria's brief indicates that "[c]ounsel has not been provided said evidence." Appellant's Brief at 17 n.1.

because there was no cogent proffer made as to the admissibility of these largely unsubstantiated allegations.[6] With no clear basis to admit these contentions, counsel was, therefore, not ineffective for not cross-examining the victim as to these discrete topics, to the extent they were not already elicited. Accordingly, Sanabria's second claim is unmeritorious.

As neither of Sanabria's two issues warrant relief, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/06/2026

_____

[6] Sanabria cites one rule of evidence, Pennsylvania Rule of Evidence 608(a), and one case, **Commonwealth v. Johnson**, 436 A.2d 645 (Pa. Super. 1981), to argue the admissibility of his so-called impeachment evidence. **See** Appellant's Brief at 18. Based on Sanabria's own quotation of **Johnson**, that case only pertains to attacking a witness's credibility regarding the influence of drugs or alcohol, by showing that "at the time of the event to which he testified his powers of observation and memory were impaired so that his recollection and account of the experience might be inaccurate." 436 A.2d at 654 (citations omitted). The thrust of **Johnson** is not apt to the present matter because Sanabria is not arguing that the victim's drug-induced mental state led to inaccuracies in her testimony but is instead averring, generally, that she has a history of lying and narcotics abuse.